# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SALLIE SMITH and PETER SMITH,** Individually and as Husband and Wife | : <br> : <br> : |
| Plaintiffs, | : <br> : **Case No. 5:19-cv-03001-JDW** |
| v. | : <br> : |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | : <br> : <br> : <br> : |
| Defendant. | : <br> : |

## MEMORANDUM

The question before the Court: If an applicant for vehicle insurance signs an application that specifies limits for uninsured/underinsured motorist coverage that are lower than the policy limits, but does not sign the insurance company's "Sign-Down" form, is the election of lower limits enforceable? Based on the facts before the Court, the answer is "yes." The lower limits apply. The Court will therefore grant State Farm Mutual Automobile Insurance Company's motion for partial summary judgment, and it will deny the summary judgment motion that Plaintiffs Sallie and Peter Smith filed.

## I. BACKGROUND

### A. The Policies

The parties have stipulated to the applicable facts. In December 2018, Ms. Smith was involved in a car accident. The other driver was at fault, but she did not have enough insurance to pay for the damage and the injuries that she caused. So Ms. Smith looked to the UIM coverage that her own insurance policies provided.

At that time, the Smiths were parties to three separate State Farm policies. Two vehicle polices are not at issue here. A third, a motorcycle policy with Policy No. 834 7306-B07-38B, is the subject of this case. For each policy, the declaration sheets show liability coverage of $100,000 per person/$300,000 per accident and UIM coverage in the amount of $15,000 per person/$30,000 per accident.

The Smiths do not dispute that the UIM coverage on the vehicle policies is limited to $15,000 per person and $30,000 per accident. For each of those policies, when Mr. Smith completed the insurance application, he signed forms that State Farm created in which he selected UIM limits that were less than the policy limits. State Farm called those forms "Sign-Down Forms." For one vehicle policy, he signed a Sign-Down Form in August 2002, and for the other he signed in October 2016. In each form, State Farm informs the insured about the availability of uninsured and underinsured motorist coverage "with limits up to the Bodily Injury Liability Limits." (ECF No. 12-2, Exs. B, C). Both forms include the insured's acknowledgment that he is selecting lower limits of UM and UIM coverage.

Mr. Smith applied for the motorcycle policy in 1996. When he applied, he signed two relevant documents. First, he signed an "Application for State Farm Automobile Insurance." Though mostly preprinted, the Application contained handwritten selections indicating that Mr. Smith chose the UM and UIM coverage limits to be "15/30." (*Id.* at Ex. D). The language above Mr. Smith's signature on the Application says, among other things, "the limits and coverages [in the Application] were selected by me." (*Id.*) Second, he signed an "Important Notice," which includes the following language:

> Insurance companies operating in the Commonwealth of Pennsylvania are required
> by law to make available for purchase the following benefits . . . :
> . . .

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

(*Id.*, Ex. E). The Notice acknowledges that Mr. Smith's signature on the Notice or his payment of any renewal premium "evidences [his] actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits [he] ha[s] selected." (*Id.*)

When Mr. Smith applied for the motorcycle policy in 1996, State Farm utilized a Sign-Down Form that was substantially similar to the one it later used with the Smith's vehicle policies. State Farm does not have an executed Sign-Down Form for the motorcycle policy in its files, however.

The Motorcycle Policy renewed on a yearly basis and was still in force when Ms. Smith had her accident in December 2018. At each renewal, the Declaration Sheet of the Motorcycle Policy indicated that UM and UIM coverage was in the amount of $15,000 per person and $30,000 per accident. Mr. Smith has paid the policy premium for the Motorcycle Policy coverage indicated on the Declaration Sheet at each annual renewal.

### B. Procedural History

On July 5, 2019, the Smiths filed this lawsuit to recover UIM benefits under all of their policies with State Farm. The Parties stipulated to the facts and filed cross-motions for partial summary judgment on the issue of the applicable UIM policy limits under the motorcycle policy.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of

3

Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). The filing of cross–motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted).

## III. ANALYSIS

Section 1731 of Pennsylvania's Motor Vehicle Financial Responsibility Law requires insurers offering motor vehicle insurance to offer UM and UIM coverage, but it makes the purchase of such coverage optional. *See* 75 Pa.C.S.A. § 1731(a). Section 1734 of the MVFRL allows the named insured to elect limits of UM or UIM coverage in an amount equal to or less than a policy's liability limit for bodily injury. *See* 75 Pa.C.SA. § 1734 ("A named insured may request in writing the issuance of coverages under section 1731…in amounts equal to or less than the limits of liability for bodily injury). "[S]ection 1734 does not dictate that the opportunity for reduction, or a form to that effect, be presented when a policy is issued. It merely provides that a reduction of this kind may be accomplished, but only by a writing which constitutes a request by a named insured." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 639 (3d Cir.2000); *Freeth*

4

*v. Zurich Am. Ins. Co.*, 152 F. Supp. 3d 420, 426 (E.D. Pa. 2015), *aff'd* 645 F. App'x 169 (3d Cir. 2016).

"Unlike the strict requirements of fully waiving coverage under Section 1731, the election of a lower amount of coverage under Section 1734 can take any form." *Farmland Mut. Ins. Co. v. Sechrist*, 769 F. App'x 66, 70 (3d Cir. 2019); *see also Weilacher v. State Farm Mut. Auto. Ins. Co.*, 65 A.3d 976, 983, 986 (Pa. Super. Ct. 2013). A written request for reduced UIM and UM coverage under Section 1734 must include "not only the signature of the insured, but also, an express designation of the amount of coverage requested." *Orsag v. Farmers New Century Ins.*, 15 A.3d 896, 901 (Pa. 2011). The "most effective manner in which to 'expressly designate' the amount of coverage requested is by electing a specific dollar amount on an insurance application." *Id.* (quoting *Lewis v. Erie Ins. Exch.*, 568 Pa. 105, 793 A.2d 143, 153 (2002)).

The Court concludes that Mr. Smith's completion of and signature on the Application and the Notice for the motorcycle policy satisfies Section 1734. In fact, the decisions in *Orsag* and *Farmland* compel that result. In *Orsag*, the insured signed an application that requested bodily injury liability coverage of $100,000 but UM/UIM coverage of $15,000. The application in *Orsag* was pre-printed but contained blank spaces to permit applicants to write in certain information. The application also stated: (a) "I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true," and (b) "I understand that the coverage selection and limit choices here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing." *Id.* at 897. The Pennsylvania Supreme Court held that the insurance application satisfied Section 1734's writing requirement "as it clearly indicated [the insured's] desire for reduced UM/UIM coverage, and was signed by the insured." *Id* at 901. The Court explained that there might be other ways of satisfying

5

the writing requirement, but they were not necessary to satisfy Section 1734: "Though it is laudable for insurance companies to provide additional information regarding UM/UIM insurance beyond what is found in the application, we see no purpose in requiring a separate statement when it is clear from the coverage selected that the insured intended reduced UM/UIM coverage." *Id.*

In *Farmland*, the Third Circuit relied on *Orsag* to hold that an insurance application satisfied the writing requirement of Section 1734. 769 F. App'x 66 (3d Cir. 2019). There, the insured filled out an application requesting $35,000 of UIM coverage. *Id.* at 68. In addition to the application, the insured executed an "Underinsured Motorist Selection Form" in which the insured was to select UIM limits. However, the only copy of the executed form was partially obscured and mislabeled the amount of UIM coverage offered. *Id.* at 68-69. The Third Circuit held that because it was "not clear what coverage amount was selected on this selection form, given that a sticky note tab obstructed the view, the District Court properly found that the Farmland Policy Application was the operative document" which "clearly reflected … an election of the lesser amount of $ 35,000" of UIM coverage. *Id.* at 71-72.

Like the insured in those cases, Mr. Smith signed an application that requested lower limits for UM/UIM coverage when he applied for the motorcycle policy. And, the Notice that he signed indicates that he knew that the limits could have been higher. The fact that State Farm does not have a Sign-Down Form for Mr. Smith does not contradict that conclusion. The Sign-Down Form might have made things more clear, but it is ultimately belt-and-suspenders. The Application is enough. Mr. Smith's execution of a Sign-Down Form for the vehicle policies does not change that conclusion. He signed those forms in 2002 and 2016, and his actions then therefore do not reveal anything about what he intended or understood in 1996, when he applied for the motorcycle policy.

The Smiths' argument to the contrary relies on the Pennsylvania's Superior Court's decision in *Erie Ins. Exch. v. Larrimore*, 987 A.2d 732 (Pa. Super. Ct. 2009). In that case, the Court held that an application and important notice were not enough to satisfy Section 1734 because the insured did not execute the insurer's standard form for selecting lower amounts of UM/UIM coverage. But the *Orsag* decision came later, and the Supreme Court in that case held that there is "no purpose in requiring a separate statement when it is clear from the coverage selected that the insured intended reduced UM/UIM coverage" *Orsag,* 15 A.3d at 901. In *Farmland*, the Third Circuit noted the tension between the decisions in *Larrimore* and *Orsag*. *See Farmland*, 769 F. App'x at 71. The Court will follow *Orsag* as both later and a decision of Pennsylvania's Supreme Court.

The Smiths also rely on the decision in *Freeth*. There, the plaintiff signed a "Summary Form" that listed the dollar amount of coverage limits in every state and attested to the fact that the insured reviewed and signed a state-specific document selecting UM and UIM Coverage. The form also required that for certain states marked with an asterisk, including Pennsylvania, a state-specific form "MUST be signed by the First Named Insured" and included a disclaimer that stated "THIS SUMMARY FORM IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE. YOU ARE REQUIRED TO DO SO." *Id.* Those facts led the court to conclude that the summary form did not satisfy Section 1734's writing requirement. But those facts are not present here. Unlike the Summary Form in *Freeth*, nothing on the Application in this case implies that the Application was somehow incomplete without a Sign-Down Form.

## IV. CONCLUSION

It might have been better for State Farm to have Mr. Smith sign a Sign-Down Form in 1996, when he applied for the motorcycle policy. But Pennsylvania law did not require State Farm to do so. It was enough for Mr. Smith to sign an application that requested lower limits for UM and UIM coverage. Therefore, the Court will grant State Farm's Motion and deny Plaintiffs' Motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

April 8, 2020